**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **ATLANTA BELTLINE, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.:** |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **BELTLINE CONDUIT LLC** | : | |
| **BELTLINE DWELLINGS LLC, and** | : | |
| **AEDIN QUINN,** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

Plaintiff Atlanta Beltline, Inc. ("ABI") hereby files its Complaint as follows:

## Jurisdictional Allegations

1.     ABI is a non-profit corporation organized and existing under the laws of the State of Georgia with its principal place of business at 100 Peachtree Street, Suite 2300, Atlanta, Fulton County, Georgia 30303.

2.     Defendant Beltline Conduit LLC ("Conduit") is a limited liability company organized under the laws of the State of Georgia with its principal place of business at 1054 Glenwood Avenue, SE, Atlanta, Fulton County, Georgia 30316. Aedin Quinn is its registered agent.

3.      Defendant Beltline Dwellings LLC ("Dwellings") is a limited liability company organized under the laws of the State of Georgia with its principal place of business at 1054 Glenwood Avenue, SE, Atlanta, Fulton County, Georgia 30316. Aedin Quinn is its registered agent.

4.      Defendant Aedin Quinn ("Quinn") is a resident of Fulton County, Georgia, who may be served with process at his residence.

5.      This is an action for trademark [1] infringement, trademark dilution, unfair competition and violation of the anti-cybersquatting provisions under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq. (the "Lanham Act"); and for trademark infringement, violation of the Georgia Uniform Deceptive Trade Practices Act, unfair competition, dilution and attorney fees under the laws of the State of Georgia.

6.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121.  This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over ABI's claims for trademark infringement, violation of the Uniform Deceptive Trade Practices Act, unfair competition, dilution and attorney fees under the laws of the State of Georgia.

---

[1] For purposes of this Complaint, the term trademark shall encompass trademarks and servicemarks.

7.      This Court has personal jurisdiction over Conduit, Dwellings and Quinn because each is domiciled in the State of Georgia.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 because Quinn is a resident of this District and the principal office address for Conduit and Dwellings is in this District.   Venue is also proper in this District because a substantial portion of the acts complained of herein were committed by the defendants within this District.

## General Allegations

9.      The Defendants are using without authorization ABI's intellectual property, as follows: the domain name www.beltlineconduit.net; and "Beltline Conduit" and "Beltline Dwellings" as their business names (the "Infringing Names").   These infringing usages are all in connection with Defendants' businesses which operate in proximity to ABI's real estate development, in order to trade on the reputation and goodwill of ABI and the BELTLINE® and ATLANTA BELTLINE® brands and create consumer confusion and deception.

**ABI's Trademarks**

10.     The Atlanta BeltLine is the most comprehensive revitalization effort ever undertaken in the City of Atlanta and among the largest, most wide-ranging redevelopment and mobility projects currently under way in the United States.

11.     The Atlanta BeltLine will ultimately consist of a branded network of public parks, multi-use trails, affordable housing options, and transit for the citizens of Atlanta existing along 22 miles of historic railroad corridors circling Downtown Atlanta and connecting 45 Atlanta in-town neighborhoods. The Atlanta BeltLine program is a 25-year project that has completed some phases of trails and tree parks.  Work on the transit component of the project is ongoing.

12.     ABI is the owner of the BELTLINE® and ATLANTA BELTLINE® trademarks as well as variations thereof in connection with urban redevelopment services, including, but not limited to, real estate development, affordable housing, transit, parks and recreation projects and services, related online information and retail services, printed materials, tour guides, maps, signs, apparel and other goods; organization and sponsorship of educational and entertainment events and other public events; farming, arts, health and fitness programs and initiatives; and other goods and services.

13.     ABI owns numerous State of Georgia and federal trademark registrations for those marks, in addition to common law trademark rights with respect thereto (collectively, the "ABI Marks").  A list of all of the ABI Marks is attached hereto as Exhibit "A."

14.     In conjunction with Atlanta Beltline Partnership, Inc. ("ABP"), ABI operates the official ATLANTA BELTLINE® website located at www.beltline.org, which has been in operation since at least as early as 2004.

15.     ABI has undertaken great efforts over many years to establish, expand and enforce its trademark rights with respect to the BELTLINE® family of marks, and seeks to prevent potential consumer and community confusion as to its affiliation with, authorization, sponsorship or approval of products or services provided by others and the potential harm to the reputation and goodwill associated with its trademarks that could result therefrom.

16.     The BELTLINE® and ATLANTA BELTLINE® brands reflect certain principles such as transit-oriented development, less-dense urban development, pedestrian and bicycle-friendly paths, MARTA connectivity, sustainability, city revitalization, and the elimination of economic and cultural barriers.

17.   The BELTLINE® and ATLANTA BELTLINE® brands give rise to consumer expectations regarding community engagement, community strengthening, and quality.

18.    As a result, the BELTLINE® and ATLANTA BELTLINE® brands have become a very valuable source indicator for various goods and services, including real estate development services.

19.   A number of non-profit organizations have been engaged with the Atlanta BeltLine program.  One such organization, ABP, formed in July 2005, is funded entirely through private endeavors.  ABI was formed in June 2006.  Its purpose was and is to oversee the planning and implementation of the Atlanta BeltLine vision and BELTLINE and ATLANTA BELTLINE brands by working closely with Invest Atlanta and various City of Atlanta departments to refine plan details, secure public funding, inform and engage members of the community and serve as the overall project management office for the Atlanta Beltline project.

20.   ABP and ABI are responsible for fulfilling the principles of the BELTLINE and ATLANTA BELTLINE brands and meeting community expectations regarding these brands.

21.   The ABI Marks have been used by ABI and ABP to refer to the Atlanta BeltLine project and related real estate development services as well as

other goods and services related to the Atlanta BeltLine project since at least as early as May 2004.

22.    The ABI Marks and their registrations have not been abandoned, canceled or revoked.

23.    ABI and ABP have used and are currently using the ABI Marks in commerce and in connection with the Atlanta BeltLine project and related real estate development services as well as other goods and services related to the Atlanta BeltLine project and plan to continue such use in the future.

24.    ABI provides and uses the official website beltline.org and social-networking sites such as Twitter.com/atlantaBeltLine and https://www.facebook.com/atlantabeltline to disseminate information about the Atlanta BeltLine and to promote the BELTLINE and ATLANTA BELTLINE brands.  As a result, consumers are accustomed to seeking out information about the BELTLINE and ATLANTA BELTLINE brands online.

25.    ABI has carefully built the reputation of the Atlanta BeltLine program and has made substantial financial and other investments in the marketing, promotion and advertising of the Atlanta BeltLine project in connection with the ABI Marks and protection of ABI's valuable intellectual property rights.  Between 2006 and 2021, the Atlanta BeltLine has invested approximately $670 million into

the Atlanta BeltLine program, funded from tax revenue, private philanthropic sources, and local government sources.

26.    Also as a result of the hard work of ABI, the Atlanta BeltLine program has achieved a reputation of integrity, quality, efficiency, and progress among consumers and the BELTLINE and ATLANTA BELTLINE brands now enjoy significant consumer goodwill.

## **Defendants' Conduct**

27.    Conduit, Dwellings and Quinn operate their businesses in Fulton County, Georgia.

28.    Quinn also has registered the Internet domain name www.beltlineconduit.net (one of the Infringing Names), initially on August 25, 2022 and in subsequent renewals.   The domain name fully incorporates the BELTLINE name.

29.    The Defendants are using the Infringing Names to promote services closely related to the services provided by ABI using the ABI Marks.

30.    The Defendants' use of the Infringing Names is likely to cause confusion among the consuming public, who will be led to believe that the Defendants are affiliated, sponsored by or are otherwise related to ABI or that ABI approves of the Defendants' use and registration of the Infringing Names and the

contents contained on the website associated with the Infringing Domain Name, including the promotion and sale of goods and services on that website.

31.     Defendants' registration and use of the Infringing Names in connection with their businesses dilutes the distinctiveness of the ABI Marks and reduces the ability of the ABI Marks to distinguish any goods and services offered by ABI from the goods and services offered by others, including the Defendants.

32.     ABI has no ability to control: (1) the quality, safety, or characteristics of the goods or services offered and sold by the Defendants, (2) the information contained on the website associated with the domain name, or (3) the Defendants' use of the Infringing Names.

33.     Accordingly, on October 20, 2021, ABI sent a letter to Conduit and Dwellings directing them to cease and desist their infringing activities.  A true and correct copy of this letter is attached hereto as Exhibit B.

34.     ABI sent another cease and desist letter dated September 2, 2022.  A true and correct copy of that letter is attached hereto as Exhibit C.

35.     The Defendants, without authorization or license from ABI, have knowingly and willfully used and continue to use the Infringing Names in connection with their advertisement, offer for sale and sale of their goods and services.

36.     The Defendants are imitating the ABI Marks by using the Infringing Names.

37.     The community is likely to be confused about whether the Defendants' website is associated with ABI and the Atlanta BeltLine program.

38.     The use of the Infringing Names by the Defendants in connection with their businesses is likely to cause confusion, or to cause mistake or to deceive and violates ABI's intellectual property rights.

## Count One

### (Federal Trademark Infringement)

39.     ABI realleges and incorporates herein the allegations contained in Paragraphs 1 through 46 above.

40.     The ABI Marks are of great and incalculable value, are distinctive, and have become associated in the public mind with an urban real estate development of the very highest quality and reputation and a principle-based brand.

41.     Without ABI's authorization or consent, and having knowledge of ABI's well-known and senior rights in the ABI Marks, and that the Infringing Names are confusingly similar to the ABI Marks, the Defendants have offered for sale their goods and services to the consuming public in or affecting interstate commerce using the Infringing Names.

42.     The Defendants' use of the  Infringing Names is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendants' goods and services, and is likely to deceive the public into believing the goods and services being sold by the Defendants originate from, are associated with or are otherwise authorized by ABI, all to the damage and detriment of ABI's and the Atlanta BeltLine project's reputations, goodwill, funding and popularity.

43.     The website identified by Conduit's domain name intentionally trades on the ABI Marks and goodwill.

44.     The Defendants' use of the Infringing Names in connection with their goods and services in interstate commerce constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

45.     The Defendants are liable to ABI for damages for trademark infringement in violation of 15 U.S.C. § 1114, including all damages it has and may later sustain due to the Defendants' improper conduct, and all of the Defendants' profits resulting from their improper conduct, in an amount to be proven at trial, as well as the costs of the action, pursuant to 15 U.S.C. § 1117.

46.     ABI has no adequate remedy at law, and if the Defendants' activities are not enjoined, ABI will continue to suffer irreparable harm and injury to ABI's

goodwill and reputation. ABI, therefore, is also entitled to a preliminary and permanent injunction enjoining the Defendants from any use of the Infringing Names and the ABI Marks pursuant to 15 U.S.C. § 1116.

47. The actions of the Defendants have been willful and deliberate justifying an award of treble damages, and amount to exceptional circumstances, justifying an award of attorney fees to ABI pursuant to 15 U.S.C. § 1117.

## Count Two

### (Unfair Competition and False Endorsement)

48. ABI realleges and incorporates herein the allegations contained in Paragraphs 1 through 38 above.

49. ABI and the Defendants are competing sources of goods and services.

50. ABI has the exclusive right to use the BELTLINE and ATLANTA BELTLINE brands to promote its real estate development services and related goods and services.

51. The Defendants' use of the Infringing Names falsely suggests that their goods and services are connected to ABI's goods and services.

52. The Defendants' use of the Infringing Names falsely suggests that the Defendants' goods and services are endorsed by ABI.

53.   By using the Infringing Names, the Defendants misrepresent and falsely describe to the general public the origin and source of Defendants' goods and services and creates a likelihood of confusion as to both the source and sponsorship of such goods and services.

54.   The Defendants' unlawful, unauthorized and unlicensed offer for sale and sale of their goods and services under the Infringing Names creates express and implied representations that those goods and services were created, authorized or approved by ABI, all to the Defendants' profit and ABI's damage and injury.

55.   The Defendants' use of the ABI Marks, in connection with their goods and services in interstate commerce, constitutes a false endorsement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56.   The Defendants are liable to ABI for damages for false endorsement and unfair competition in violation of 15 U.S.C. § 1125, including all damages it has and may later sustain due to Defendants' improper conduct, and all Defendants' profits resulting from their improper conduct, in an amount to be proven at trial, as well as the costs of this action, pursuant to 15 U.S.C. § 1117.

57.   ABI has no adequate remedy at law, and if the Defendants' activities are not enjoined, ABI will continue to suffer irreparable harm and injury to ABI's

goodwill and reputation. ABI, therefore, is also entitled to a preliminary and permanent injunction enjoining the defendants from any use of the Infringing Names and the ABI Marks pursuant to 15 U.S.C. § 1116.

58.   The Defendants' actions have been willful and deliberate justifying an award of treble damages, and amount to exceptional circumstances, justifying an award of attorney fees to ABI pursuant to 15 U.S.C. § 1117.

## Count Three

### (Federal Trademark Dilution)

59.   ABI realleges and incorporates herein the allegations contained in Paragraphs 1 through 38 above.

60.   The ABI Marks are "famous marks" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and were "famous marks" prior to Defendants' conduct alleged herein.

61.   The Defendants' distribution, offer for sale, and sale in commerce of their goods and services through use of the Infringing Names dilutes the distinctive quality of the ABI Marks and were done with the willful intent to trade on ABI's reputation.

62.   The Defendants' use of the Infringing Names is likely to impair the distinctiveness of the ABI Marks.

63.    The Defendants' use of the Infringing Names is likely to tarnish and harm the reputation of the ABI Marks.

64.    The Defendants' unauthorized use of the Infringing Names in connection with their goods and services has occurred with notice and full knowledge that their use is not authorized or licensed by ABI.

65.    The Defendants' actions have been committed in knowing and willful violation of ABI's rights under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

66.    The Defendants are liable to ABI for damages for dilution in violation of 15 U.S.C. § 1125, including all damages it has and may later sustain due to the Defendants' improper conduct, and all Defendants' profits resulting from their improper conduct, in an amount to be proven at trial, as well as the costs of this action, pursuant to 15 U.S.C. § 1117.

67.    ABI has no adequate remedy at law and, if the Defendants' activities are not enjoined, ABI will continue to suffer irreparable harm and injury to the distinctiveness and reputation of the ABI Marks.  ABI, therefore, is also entitled to a preliminary and permanent injunction enjoining the Defendants from any use of the Infringing Names and the ABI Marks pursuant to 15 U.S.C. § 1116.

68.     The Defendants' actions have been willful and deliberate justifying an award of treble damages, and amount to exceptional circumstances, justifying an award of attorney fees to ABI pursuant to 15 U.S.C. § 1117.

## Count Four

### (Violation of Anti-Cybersquatting Provisions of Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d))

69.     ABI realleges and incorporates herein the allegations contained in Paragraphs 1 through 38 above.

70.     Quinn registered the Conduit domain name on August 25, 2022 and has renewed the registration since then, and he and Conduit are using the domain name as the address for their website.

71.     The Conduit domain name is confusingly similar to the BELTLINE Mark, which was already in use by ABI or its predecessor in interest ABP, and was distinctive at the time of registration of the Conduit domain name and was famous at the time of registration of the domain name.

72.     Quinn and Conduit's unauthorized use of the Conduit domain name has occurred with notice and full knowledge of ABI's rights with respect to the BELTLINE mark and with full knowledge that their use of the domain name is not authorized or licensed by ABI.

73.     The registration and use of the Conduit domain name by Quinn and Conduit has been with a bad faith intent to profit from the BELTLINE mark, intending to trade upon the reputation and goodwill associated with the BELTLINE mark.

74.     Quinn and Conduit's actions have been committed in knowing and willful violation of ABI's rights under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

75.     Quinn and Conduit are liable to ABI for damages for violation of 15 U.S.C. § 1125(d), including all damages it has and may later sustain due to their improper conduct, and all of their profits resulting from their improper conduct, in an amount to be proven at trial, as well as the costs of this action, pursuant to 15 U.S.C. § 1117.

76.     ABI has no adequate remedy at law and, if Quinn and Conduit's activities are not enjoined, ABI will continue to suffer irreparable harm and injury to the distinctiveness and reputation of the ABI Marks.

77.     ABI, therefore, is also entitled to a preliminary and permanent injunction enjoining Quinn and Conduit from registration and use of the Conduit domain name pursuant to 15 U.S.C. § 1116 and ordering forfeiture or cancellation of the domain name or transfer of the domain name to ABI.

78.   Quinn and Conduit's actions have been willful and deliberate justifying an award of treble damages, and amount to exceptional circumstances, justifying an award of attorney fees to ABI pursuant to 15 U.S.C. § 1117.

## Count Five

## (Georgia Trademark Infringement under O.C.G.A. § 10-1-450)

79.   ABI realleges and incorporates herein the allegations contained in Paragraphs 1 through 38 above.

80.   ABI has procured for itself, under the provisions of O.C.G.A. Title 10, Ch. 1, the registration of the ATLANTA BELTLINE and BELTLINE marks.

81.   ABI's trademark registrations cover "construction and repair/urban redevelopment" and "construction and repair/urban redevelopment: providing online information relating to urban redevelopment," respectively.

82.   The ATLANTA BELTLINE and BELTLINE marks are of great and incalculable value, are distinctive, and have become associated in the public mind with a real estate development of the very highest quality and reputation and a principle-based brand.

83.   Without the consent of ABI, the Defendants are using the Infringing Names in connection with their businesses in violation of O.C.G.A. Title 10, Ch. 1.

84.    The Defendants have used the Infringing Names to cause confusion or mistake or to deceive as to the source of origin of their goods and services.

85.    The Defendants are liable to ABI for all damages ABI has and may later sustain due to the Defendants' improper conduct, and all of the Defendants' profits resulting from their improper conduct, in an amount to be proven at trial, pursuant to O.C.G.A. § 10-1-450.

86.    Alternatively, ABI is entitled to liquidated damages pursuant to O.C.G.A. § 10-1-450.

87.    ABI has no adequate remedy at law, and if the Defendants' activities are not enjoined, ABI will continue to suffer irreparable harm and injury to ABI's goodwill and reputation.  ABI, therefore, is also entitled to a preliminary and permanent injunction enjoining the Defendants from any use of the Infringing Names and the ABI Marks pursuant to O.C.G.A. § 10-1-451.

88.    The Defendants' willful misconduct is also attended by malice, fraud, wantonness, oppression, and an entire want of care that raises a presumption of conscious indifference to the consequences of their actions, such that the defendants are also liable to ABI for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## Count Six

### (Common Law Trademark Infringement)

89.     ABI realleges and incorporates herein the allegations contained in Paragraphs 1 through 38 above.

90.     The ABI Marks constitute valid and protectable marks under common law.

91.     The Defendants are liable for infringement of the ABI Marks under the common law of Georgia.   As alleged herein, the Defendants' use of the Infringing Names in connection with the offer for sale and sale of their goods and services is likely to cause confusion or mistake or to deceive consumers as to the source and sponsorship of goods and services.

92.     The Defendants are liable to ABI for all damages it has and may later sustain due to the Defendants' improper conduct, and all their profits resulting from their improper conduct, in an amount to be proven at trial.

93.     ABI has no adequate remedy at law, and if the Defendants' activities are not enjoined, ABI will continue to suffer irreparable harm and injury to ABI's goodwill and reputation.   ABI, therefore, is also entitled to a preliminary and permanent injunction enjoining the Defendants from any use of the Infringing Names and the ABI Marks.

94.     The Defendants' willful misconduct is also attended by malice, fraud, wantonness, oppression, and an entire want of care that raises a presumption of conscious indifference to the consequences of their actions, such that they are also liable to ABI for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## Count Seven

### (Unfair Competition Under Georgia Common Law)

95.     ABI realleges and incorporates herein the allegations contained in Paragraphs 1 through 38 above.

96.     The Defendants have willfully and deliberately engaged in unfair competition with ABI in violation of the common law of the State of Georgia in connection with the offer for sale, sale and promotion of their goods and services, with the intention of trading upon the goodwill established by ABI.

97.     ABI and the Defendants are competing sources of goods and services.

98.     ABI has the exclusive right to use the ABI Marks to promote its real estate development services and related goods and services.

99.     The Defendants' use of the Infringing Names falsely suggests that their goods and services are connected to ABI's goods and services.

100.    The Defendants' use of the Infringing Names falsely suggests that their goods and services are endorsed by ABI.

101.   The Defendants are misappropriating the benefits of substantial effort and money expended by ABI in establishing its rights in the ABI Marks.

102.   The Defendants are liable to ABI for all damages it has and may later sustain due to the Defendants' improper conduct, and all their profits resulting from their improper conduct, in an amount to be proven at trial.

103.   ABI has no adequate remedy at law, and if the Defendants' activities are not enjoined, ABI will continue to suffer irreparable harm and injury to ABI's goodwill and reputation.   ABI, therefore, is also entitled to a preliminary and permanent injunction enjoining the Defendants from any use of the Infringing Names and the ABI Marks.

104.   The Defendants' willful misconduct is also attended by malice, fraud, wantonness, oppression, and an entire want of care that raises a presumption of conscious indifference to the consequences of their actions, such that they are also liable to ABI for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## Count Eight

### (Georgia Uniform Deceptive Trade Practices Act)

105.   ABI realleges and incorporates herein the allegations contained in Paragraphs 1 through 38 above.

106.   The Defendants' use of the Infringing Names (a) allows the Defendants to pass off their goods and services as if they were the goods and services of ABI; (b) causes likelihood of confusion or misunderstanding as to source, sponsorship, and approval; (c) causes likelihood of confusion as to affiliation, connection, and sponsorship; and (d) otherwise creates a likelihood of confusion and misunderstanding.

107.   The Defendants' use of the Infringing Names therefore constitutes a violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, et seq.

108.   Because of the Defendants' conduct, ABI is entitled to injunctive relief pursuant to O.C.G.A. § 10-1-373.

## Count Nine

### (Unfair Competition under O.C.G.A. § 23-2-55)

109.   ABI realleges and incorporates herein the allegations contained in Paragraphs 1 through 38 above.

110.   The Defendants are improperly using the Infringing Names in an attempt to encroach upon the business of ABI with the intention of deceiving or misleading the public.

111.   The Defendants' conduct is a fraud for which equity will grant relief pursuant to O.C.G.A § 23-2-55, and they are liable to ABI for damages in an amount to be proven at trial.

112.   The Defendants' willful misconduct is also attended by malice, fraud, wantonness, oppression, and an entire want of care that raises a presumption of conscious indifference to the consequences of their actions, such that they are also liable to ABI for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## **Count Ten**

### **(Dilution under O.C.G.A. § 10-1-451(b))**

113.   ABI realleges and incorporates herein the allegations contained in Paragraphs 1 through 38 above.

114.   The ABI Marks are of such originality that they are capable of exclusive appropriation.

115.   The Defendants' use of the Infringing Names has injured and is likely to injure ABI's business reputation by diluting the distinctive quality of the ABI Marks.

116.   The Defendants' unlawful conduct is knowing and willful.

117.   The Defendants' use of the Infringing Names constitutes a violation of O.C.G.A. § 10-1-451(b) and they are liable to ABI for wrongful dilution.

118.   The Defendants are subject to injunctive and equitable relief pursuant to O.C.G.A. § 10-1-451(b) and are also liable to ABI for damages and an accounting of profits in an amount to be determined at trial.

119.   The Defendants' willful misconduct is also attended by malice, fraud, wantonness, oppression, and an entire want of care that raises a presumption of conscious indifference to the consequences of their actions, such that they are also liable to ABI for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## Count Eleven

### (Attorney Fees)

120.   ABI realleges and incorporates herein the allegations contained in Paragraphs 1 through 119 above.

121.   The Defendants have acted in bad faith, have been stubbornly litigious and have put ABI to unnecessary trouble and expense.

122.   The Defendants are therefore liable to ABI for its expenses of litigation, including reasonable attorney fees, pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, ABI requests that this Court:

(a)    grant judgment for ABI and against the Defendants on the Complaint;

(b)    grant judgment for ABI and against the Defendants as to its claim for federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114;

(c)    grant judgment for ABI and against the Defendants as to its claim for federal unfair competition and false endorsement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(d)    grant judgment for ABI and against the Defendants as to its claim for federal trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

(e) grant judgment for ABI against Quinn and Conduit as to its claim for violation of the anti-cybersquatting provisions of Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d).

(e)    grant judgment for ABI and against the Defendants as to its claim for Georgia trademark infringement in violation of O.C.G.A. § 10-1-450;

(f)    grant judgment for ABI and against the Defendants as to its claim for trademark infringement under the common law of the State of Georgia;

(g)    grant judgment for ABI and against the Defendants as to its claim for unfair competition under the common law of the State of Georgia;

(h)     grant judgment for ABI and against the Defendants as to its claim for violation of the Georgia Uniform Deceptive Trade Practices Act;

(i)     grant judgment for ABI and against the Defendants as to its claim for unfair competition within the proscription of O.C.G.A. § 23-2-55;

(j)     grant judgment for ABI and against the Defendants as to its claim for dilution under O.C.G.A. § 10-1-451(b);

(k)     award ABI its expenses of litigation, including reasonable attorney fees, pursuant to O.C.G.A. § 13-6-11;

(l)     enjoin the Defendants, including their agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them;

i.     from using the Infringing Names or any ABI Marks in any manner in connection with the advertising, offering for sale, or sale of any product or service that is not ABI's, or is not authorized by or affiliated with ABI;

ii.     from using the name BeltLine, in any format or font, in connection with their business;

iii.     from using the Infringing Names or from inducing or enabling others to do so;

iv.      from passing off, inducing, or enabling others to sell or pass off any goods or services as and for goods or services under the control and supervision of ABI and approved by ABI for sale under the ABI Marks;

v.      from committing any acts calculated to cause purchasers to believe that the Defendants' goods and services are those sold under the control and supervision of ABI, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of ABI;

vi.      from further diluting and infringing the ABI Marks and damaging ABI's goodwill; and

vii.      from otherwise competing unfairly with ABI in any manner;

(m)   order that Quinn cancel or forfeit the Conduit domain name or transfer the domain name to ABI;

(n)   order that the Defendants account for and pay over to ABI profits realized by them by reason of their unlawful acts and that the amount of damages for each infringement of the ABI Marks be increased by a sum not exceeding three times the amount thereof as provided by law;

(o)   award ABI damages in an amount to be determined at trial;

(p)    award ABI its expenses of litigation, including reasonable attorney

fees, pursuant to 15 U.S.C. § 1117;

(q)    award ABI treble damages;

(r)    tax all costs against the Defendants; and

(s)    grant ABI such additional relief as this Court deems just.

### Jury Demand

ABI demands trial by Jury on all triable issues.

This 14th day of July, 2023.

/s/ Michael J. King
Michael J. King
Georgia Bar No. 421160
KingM@gtlaw.com
*Counsel for Atlanta BeltLine, Inc.*

Greenberg Traurig, LLP
Terminus 200, Suite 2500
3333 Piedmont Road, NE
Atlanta, Georgia 30305
Telephone: 678.553.2100
Fax: 678.553.2212

*ADMIN 688283021v1*